| | | |
|---|---|---|
| SAEED AL-AMERI,<br>Parent and Next Friend of<br>A. A.-A.          , Minor<br>a/k/a A.S.M.M.A-A.<br>]<br>3522 International Court, N.W.<br>Washington, D.C.  20008 | :<br><br>:<br><br>:<br><br>: | IN THE<br><br>CIRCUIT COURT<br><br>FOR<br><br>BALTIMORE CITY |
| and | : | Case No.: 24 C 15 001994 |
| SAEED AL-AMERI<br>3522 International Court, N.W.<br>Washington, D.C.  20008 | :<br><br>: | |
| and | : | |
| TINA ASSOUIDI AL-AMERI<br>3522 International Court, N.W.<br>Washington, D.C.  20008 | :<br><br>: | |
| Plaintiffs | : | |
| v. | : | |
| THE JOHNS HOPKINS HOSPITAL<br>600 North Wolfe Street<br>Baltimore, Maryland  21205<br>    Serve on Resident Agent:<br>    Joanne Pollak<br>    600 North Wolfe Street<br>    Baltimore, Maryland  21205 | :<br><br>:<br><br>:<br><br>: | |
| Defendant | : | |

:    :    :    :    :    :    :    :    :    :    :    :

## COMPLAINT

### COUNT I

COMES NOW the Plaintiff, Saeed Al-Ameri, Parent and Next Friend of A. A.-A.          ,

Minor a/k/a  A.S.M.M.A-A.                                    , by his attorneys, Jonathan

1



Schochor, Kerry D. Staton, and Schochor, Federico and Staton, P.A. and sues, The Johns
Hopkins Hospital, Defendant:

     1.     The Plaintiff alleges that the Defendant The Johns Hopkins Hospital (hereinafter
referred to as "Hospital"), through its agents, servants and employees, owed to the Minor
Plaintiff a duty to exercise a degree of care, skill and judgment expected of a competent medical
corporation acting in the same or similar circumstances, which duty included the performance of
adequate and proper diagnostic tests and procedures to determine the nature and severity of the
Minor Plaintiff's condition, careful diagnosis of such condition, employment of appropriate
procedures, tests, surgery and/or treatment to correct such conditions without inflicting injury
upon the Minor Plaintiff, continuous evaluation of the Minor Plaintiff's condition and effects of
such treatment and the adjustment of the course of treatment in response to ongoing surveillance
and evaluation -- all of which the Defendant's personnel failed to do.

     2.     The Defendant Hospital, through its agents, servants and/or employees, was
negligent in that it failed to employ appropriate treatment, surgery and/or procedures, failed to
carefully and thoroughly evaluate the Minor Plaintiff's condition, failed to thoroughly evaluate
the effects and results of any tests, treatment and/or procedures performed, failed to adjust the
Minor Plaintiff's treatment in response to appropriate evaluation of the effects of treatment,
failed to properly monitor the course of the Minor Plaintiff's condition and treatment, failed to
employ adequate and proper diagnostic procedures and/or tests to determine the nature and
extent of the Minor Plaintiff's condition, failed to diagnose the Minor Plaintiff's condition and
was otherwise negligent.

3.      At all times referred to herein, all medical and surgical personnel caring for the Minor Plaintiff acted as duly authorized agents and/or employees of the Defendant Hospital, acting within the scope of their respective authority.

4.      As a direct and proximate result of the ongoing negligence of the Defendant Hospital's personnel, the Minor Plaintiff has suffered unending physical pain, emotional anguish as well as fear and anxiety about her condition, which culminated in severe and permanent injuries and permanent disability which is more fully described, hereinbelow.

5.      It is alleged that the Minor Plaintiff,     A. A.-A.     , arrived at the Defendant Hospital on October 31, 2011, to be evaluated for surgery to correct a condition known as scoliosis (curvature of the spine).  At the time she arrived at the Defendant Hospital with her father, she was 9 years of age.  As well, all hospital personnel knew and understood that the young Plaintiff had travelled some 7,000 miles from her home in the United Arab Emirates to undergo surgery at the Defendant Hospital.

6.      Upon arrival, she was evaluated at the Defendant Hospital's orthopaedic clinic for scoliosis and bilateral extremity deformity.  After evaluation, the Defendant Hospital's personnel advised that a posterior spinal fusion with a "growing rod" was required to correct her condition. It was then determined that the Minor Plaintiff should have a work-up preoperatively, including pulmonology, genetic and plastic surgery consultations, in addition to magnetic resonance imaging (MRI) of her spine from C2 down to the lumbar area to evaluate for any cord compression and a computed tomography (CT) scan of the lumbar spine.  All necessary tests and studies were completed, and the Minor Plaintiff was cleared for her surgery.  It is alleged that prior to surgery, the Defendant Hospital's personnel further advised the Minor Plaintiff's father that the surgery was a safe and effective means of correcting his daughter's scoliosis.  Relying on

the representations of the Defendant Hospital's personnel, the Minor Plaintiff's father agreed to the recommended surgical procedure.

7.       Accordingly, on February 24, 2012, the Minor Plaintiff presented to the Defendant Hospital for surgery. The evening before surgery, she was walking, jumping on her bed for play and had the full use of her arms and legs. Further, she was able to breathe normally, without the use of a ventilator. Preoperatively, the Defendant Hospital's personnel confirmed that she had 5-out-of-5 strength in her lower extremities (legs).

8.       On February 24, 2012, the Minor Plaintiff was taken to the operating room where a T3-T4 and L3-L4 spinal fusion was performed with posterior segmental instrumentation. During surgery, there was monitoring of the evoked potentials which showed no neurological injuries or deficits. At 1:04 p.m., surgery was completed, she was extubated and found to be awake, alert and at her preoperative baseline for vital signs. She was able to move all extremities normally. She was then moved to the Defendant Hospital's Pediatric Intensive Care Unit (PICU) for further monitoring and recovery.

9.       It is alleged that post-surgery, the standards of care required close monitoring of the Minor Plaintiff, including but not limited to vital signs and extremity strength. Tragically, the Defendant Hospital's personnel failed to properly monitor the Minor Plaintiff postoperatively and negligently failed to intervene in response to her abnormal condition -- particularly ongoing hypotension (low blood pressure) -- in continuing violation of the standards of care.

10.      Specifically, at 1:15p.m. on the day of surgery, the Minor Plaintiff was noted to have a mean arterial blood pressure of 59 (abnormally low) -- and her oxygen saturation level dropped to 88% (abnormally low). She was then placed on 3 liters oxygen via a face mask. She was continued on 3 liters oxygen for an hour and then it was reduced to 2 liters via nasal cannula.

However, nothing was done to increase the Minor Plaintiff's significantly low blood pressure, in violation of the standards of care.

11.     At 4:00 p.m., a neurological assessment was performed and the Minor Plaintiff was noted to have 4 out of 5 strength in her upper extremities bilaterally and 3 out of 5 in her lower extremities bilaterally (significantly reduced strength).   At that time, the Defendant Hospital's personnel were required by the standards of care to contact the surgical team or other specialists so that appropriate examination, evaluation, close monitoring, and intervention would be provided.   That never occurred -- in continuing violation of the standards of care.   In fact, nothing was done to properly examine, evaluate, monitor and/or intervene.   It is alleged that in view of the surgery performed, the Defendant Hospital's personnel, including but not limited to members of the operating team, were required to monitor the Minor Plaintiff closely for any postoperative abnormalities (such as low blood pressure and decreasing extremity strength) and to intervene in a timely fashion to correct those abnormalities in a timely fashion.   Tragically, they failed to do so in continuing violation of the standards of care.   It is alleged that the obvious decrease in extremity strength documented in the medical record, in addition to the significant drop in the Minor Plaintiff's blood pressure and oxygen saturation level, required evaluation and appropriate intervention -- which did not occur.

12.     At 6:00 p.m. on the day of surgery, the Minor Plaintiff's respirations were noted to be between 5 and 10 -- abnormally low.   In response, the Defendant Hospital's personnel turned off the Minor Plaintiff's patient controlled analgesia (PCA) pump.   Thus, the Hospital personnels' "solution" to the low respiratory rate was to turn off the Minor Plaintiff's pain medication hoping her increased pain would increase her respiratory rate.   It is alleged that the standards of care required the Defendant Hospital's personnel to evaluate and determine the

5

etiology of the Minor Plaintiff's decreased blood pressure, decreased oxygen saturation level, decreased respiratory rate, and decreased extremity strength, and to timely act to correct those conditions. Instead, the Defendant's personnel simply turned off the Minor Plaintiff's pain control medication which put her in severe pain but did nothing to properly diagnose and treat her condition -- in continuing violation of the standards of care.

13.    At 8:00 p.m. on February 24, 2012 (still the day of surgery), a small amount of emesis (vomit) was noted and the Minor Plaintiff was administered Zofran. She remained with 3-out-of-5 lower extremity strength throughout the rest of that day. Nothing was done. She also continued suffering repeated episodes of significant hypotension (low blood pressure) which were negligently ignored, in continuing violation of the standards of care.

14.    At 10:14 p.m., the Minor Plaintiff's mean arterial pressure was noted to be 54. Her heart rate was noted to be intermittently low in the 60s, with her blood pressure 70s/30s while sleeping. These values are significantly depressed and required immediate evaluation, diagnosis, and intervention. Although a physician was finally notified, nothing was done to evaluate and intervene to raise the Minor Plaintiff's blood pressure or obtain necessary consultation with neurology, neurosurgery and/or other specialities to properly assess the Minor Plaintiff's condition and intervene to correct her abnormalities prior to catastrophe. The Defendant Hospital's physician negligently failed to order any fluids, vasopressors, or other treatment to increase the blood pressure in violation of the standards of care. Additionally, required neurological and/or neurosurgical and/or other evaluation was not provided, in continuing violation of the standards of care.

15.    The Minor Plaintiff suffered with persistent hypotension throughout the evening of February 24, 2012, and into February 25, 2012. Blood pressures were measured with an

arterial catheter as well as a cuff, but no one at the Defendant Hospital did anything to effectively correct the Minor Plaintiff's condition. Since surgery had ended, no one had intervened to raise and stabilize the Minor Plaintiff's blood pressure in continuing violation of the standards of care. Additionally, the Minor Plaintiff suffered with episodes of oxygen desaturation which went unattended, in continuing violation of the standards of care.

16.     On February 25, 2012, at approximately 2:00 a.m., the Defendant Hospital's nurse noted that the Minor Plaintiff's lower extremity strength had decreased bilaterally to 2-out-of-5, with continuing episodes of hypotension.     Those findings required an immediate medical/surgical response to conform with the applicable standards of care.  Tragically, nothing was done.  At 3:00 a.m., the Minor Plaintiff's mean arterial pressure was noted to be 62 -- severely depressed -- on a continuing basis.  No intervention was provided.  At 6:00 a.m. and 7:00 a.m. on February 25, 2012, the Minor Plaintiff's mean arterial pressure was 56 and at 7:28 a.m., it was 54.  Tragically, still no intervention was provided, all in continuing violation of the standards of care.

17.     At 8:00 a.m., the Minor Plaintiff's mean arterial pressure was 50 -- severely depressed.  Her neurological strength check revealed 4 out of 5 bilateral strength in her upper extremities and 3 out of 5 bilateral strength in her lower extremities. Amazingly, no one intervened.  In accordance with the standards of care, the young Minor Plaintiff should have received boluses of fluid, drugs and/or other treatment to increase her blood pressure during the postoperative course which was never done.  Additionally, the Minor Plaintiff should have been taken back to the operating room in a timely fashion to alter or to remove the spinal instrumentation, relieve any pressure on the spinal cord and/or nerves, and perform any other

procedures, tests and/or studies to prevent the catastrophic outcome in this case. Tragically, this never occurred, in continuing violation of the standards of care.

18.     No vital signs were taken at 9:00 a.m., and at 10:00 a.m., the Minor Plaintiff was noted to have diminished responsiveness and a blood pressure of 65/25 (continuing severe hypotension). In addition, she reported no feeling below the spinal level of T2. Orthopaedics was belatedly consulted. The Minor Plaintiff was placed on vasopressors and steroids and a computed tomography (CT) scan was ordered. However, amazingly, no emergency surgery was performed on a STAT basis to remove and/or modify instrumentation to relieve any pressure on the spinal cord and/or nerves or perform any other tests and procedures necessary to reverse and/or stabilize the Minor Plaintiff's condition. The negligence continued unabated.

19.     At 4:52 p.m., an MRI was finally performed, which showed an expanded spinal cord between C2, (the cervical spine) and T2 (the thoracic spine) with increased T2 signal abnormality indicative of cord ischemia due to the continuing low blood pressure. In fact, the Minor Plaintiff suffered an infarction to her spinal cord due to prolonged hypotension which the Defendant Hospital's personnel negligently failed to treat on an ongoing basis for approximately 21 hours. The low blood pressure and resulting infarction of the spinal cord caused quadriplegia as well as inability to breathe independently. Accordingly, the Minor Plaintiff required the placement of a tracheostomy (breathing) tube with mechanical ventilation support (a breathing machine) and placement of a gastrostomy tube (a feeding tube). She was paralyzed and could not move her arms or legs.

20.     It is alleged that as the direct and proximate result of the ongoing negligence of the Defendant Hospital's personnel, the Minor Plaintiff suffered an infarcted spinal cord due to prolonged hypotension resulting in paralysis of both her arms and legs (quadriplegia), an

inability to breathe on her own, and an inability to ingest food like a normal person, requiring feeding by liquid through a tube. Had the Defendant Hospital's personnel conformed with the standards of care, the Minor Plaintiff's low blood pressure and other postoperative findings would have been treated in a timely fashion, the spinal cord would not have infarcted, and the Minor Plaintiff would not have suffered quadriplegia, required a tracheostomy and ventilator support and a feeding tube. Had the Defendant Hospital's personnel acted in accordance with the standards of care, the Minor Plaintiff would have made an uneventful recovery and would have been discharged home to resume her activities.

21.     It is alleged that, as the direct and proximate result of the Defendant Hospital's ongoing negligence, the Minor Plaintiff has sustained permanent and irreversible injuries, disability and damages. She requires continuous 24-hour-a-day/7-day-a-week/365-day-a-year care and suffers with a permanent inability to breathe on her own, requiring continuous tracheostomy and ventilator support. Further, she suffers with quadriplegia (paralysis of both arms and legs) and additionally suffers with a neurogenic bladder, neurogenic bowel, chronic hypertension, requires PEG tube feedings, has suffered with seizures, and has suffered other injuries, disability and damages. She requires continuous bedside monitoring by certified clinicians on a 24-hour-a-day basis, and required skilled medical care on a permanent basis. All of the injuries, damages and disability are permanent in nature.

22.     It is alleged that had the Defendant Hospital's personnel acted in accordance with the standards of care, a timely diagnosis would have been made, appropriate intervention would have been provided in a timely fashion, and all of the injuries, damages and disability sustained by the Minor Plaintiff would have been avoided. In fact, had the Defendant Hospital's personnel acted in accordance with the standards of care, the Minor Plaintiff would have been discharged

with no quadriplegia, ventilator dependency, PEG tube, or other damages or disability, and would have resumed her normal activities.

23.     It is alleged that the Defendant Hospital's health care providers negligently failed to document the Minor Plaintiff's extremity strength immediately upon admission to the PICU and thereafter; negligently failed to address her initial finding of 3-out-of-5 strength in the lower extremities, and even decreasing strength thereafter; negligently failed to properly assess her hypotension initially and on a continuing basis; negligently failed to treat her hypotension (low blood pressure) with medications and fluids (to expand volume) and/or provide other intervention on a continuing basis; negligently failed to have appropriate consultations with proper specialists on a continuing basis; negligently failed to examine, assess, evaluate and treat the Minor Plaintiff on a continuing basis; negligently failed to take the Minor Plaintiff back to surgery in a timely fashion to remove or alter instrumentation and/or provide other surgical intervention to relieve pressure on the spinal cord and/or nerves; and negligently failed to properly monitor, examine, diagnose and provide treatment and/or intervention to avoid the injuries, damages and permanent disability suffered by the Minor Plaintiff.

24.     As the direct and proximate result of the ongoing negligence of the Defendant Hospital's personnel, the Minor Plaintiff has had the quality of her life destroyed. She will be dependent upon others for all of her life's activities. She will not enjoy a normal childhood; will not enjoy a normal adolescence; will not grow into a normal, young adult or adult; will not marry; will not have children; will not take her place as a normal, functioning citizen; and will not seek and hold appropriate gainful employment -- all due to the ongoing violations of the standards of care on the part of the Defendant Hospital's medical personnel.

10

25. It is alleged that the Minor Plaintiff has in the past, is presently, and will in the future continue to suffer severe physical pain, emotional anguish, as well as fear, anxiety, humiliation and embarrassment over her condition. Additionally, it is alleged that the Minor Plaintiff has in the past, is presently, and will in the future continue to incur hospital, surgical, pharmacological, physiotherapeutic, nursing, custodial and other losses and expenses for which claim is made.

26. The Plaintiff and Minor Plaintiff refer to the negligence of the Defendant Hospital's personnel as the sole and proximate cause of all of the injuries, damages and disability of the Minor Plaintiff -- with the Plaintiff and Minor Plaintiff being in no way contributorily negligent.

27. The negligence complained of occurred in Baltimore City. Venue is claimed in Baltimore City. The amount in controversy exceeds Thirty Thousand Dollars ($30,000.00).

_____
Jonathan Schochor

_____
Kerry D. Staton

_____
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000

Attorneys for the Plaintiffs

11

## COUNT II

COMES NOW the Plaintiff, Saeed Al-Ameri, Parent and Next Friend of A. A.-A. , Minor a/k/a A.S.M.M.A.A-A. , by his attorneys, Jonathan Schochor, Kerry D. Staton, and Schochor, Federico and Staton, P.A. and sues, The Johns Hopkins Hospital, Defendant:

1. The Plaintiff incorporates in this Count those facts set forth in Count I hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

2. The Plaintiff alleges that the Defendant Hospital's medical personnel negligently failed to fully and properly inform and advise the Plaintiff of the material risks associated with the surgical procedure and/or other treatment that they intended to utilize, in violation of the standards of care.

3. It is alleged that the Plaintiff, as well as any reasonable and prudent individual, would have refused the surgical procedure and/or other treatment performed by the Defendant Hospital had the Plaintiff been advised, as required by the standards of care, as to the injuries, damages and/or disability which could result from the technique, surgery, and/or other treatment utilized. It is alleged that had the Defendant Hospital's personnel conformed with the applicable standards of care and/or treatment, and accurately described the risks and/or damages and/or injury and/or disability associated with the procedure, the Plaintiff, as well as other reasonable and prudent individuals similarly situated would have refused the procedure and/or treatment. Had the Defendant complied with the Doctrine of Informed Consent, it is alleged that the Minor Plaintiff would not have had the surgical procedure and/or other treatment as performed, and all

12

of the injuries, damages and the permanent disability of the Minor Plaintiff would have been avoided.

4.     The negligence complained of occurred in Baltimore City. Venue is claimed in Baltimore City. The amount in controversy exceeds Thirty Thousand Dollars ($30,000.00).

_____
Jonathan Schochor

_____
Kerry D. Staton

_____
Schochor, Federico and Staton, P.A.
1211 St. Paul Street
Baltimore, Maryland 21202
(410) 234-1000
Attorneys for the Plaintiffs

## COUNT III

COMES NOW the Plaintiff, Saeed Al-Ameri, by his attorneys, Jonathan Schochor, Kerry D. Staton and Schochor, Federico and Staton, P.A. and sues, The Johns Hopkins Hospital, Defendant:

1.     The Plaintiff incorporates in this Count those facts set forth in Counts I and II hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

2.     It is alleged that the Plaintiff has in the past, is presently, and will in the future continue to incur hospital, surgical, physiotherapeutic, pharmacological, nursing, custodial, and other losses and expenses for which claim is made.

13

3.     The negligence complained of occurred in Baltimore City.  Venue is claimed in Baltimore City.  The amount in controversy exceeds Thirty Thousand Dollars ($30,000.00).

_____
Jonathan Schochor

_____
Kerry D. Staton

Schochor, Federico & Staton, PA

_____
Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland  21202
(410) 234-1000

Attorneys for the Plaintiffs

### COUNT IV

COMES  NOW  the  Plaintiff,  Tina  Assouidi  Al-Ameri,  by  her  attorneys, Jonathan Schochor, Kerry D. Staton, and Schochor, Federico and Staton, P.A. and sues, The Johns Hopkins Hospital, Defendant:

1.     The Plaintiff incorporates in this Count those facts set forth in Counts I, II and III hereinabove by reference thereto intending that each and every allegation hereinabove be deemed part hereof as if the same were repeated herein.

2.     It is alleged that the Plaintiff has in the past, is presently, and will in the future continue to incur hospital, surgical, physiotherapeutic, pharmacological, nursing, custodial, and other losses and expenses for which claim is made.

14

3.     The negligence complained of occurred in Baltimore City.   Venue is claimed in Baltimore City.  The amount in controversy exceeds Thirty Thousand Dollars ($30,000.00).

_____

Jonathan Schochor

_____

Kerry D. Staton

_____

Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland  21202
(410) 234-1000

Attorneys for the Plaintiffs

15

SAEED AL-AMERI,  Parent and          :          IN THE
Next Friend of  A. A.-A.          , Minor
a/k/a ⁄  A.S.M.M.A.-A.                             :          CIRCUIT COURT
                                              ,
et al                                                :          FOR

                      Plaintiffs             :          BALTIMORE CITY

        v.                                   :          Case No.: 24c1500 1997

THE JOHNS HOPKINS HOSPITAL           :

                      Defendant              :

:      :      :      :      :      :      :      :      :      :      :      :      :

## ELECTION FOR JURY TRIAL

The Plaintiffs in this case elect to try their case before a Jury.

_____

Jonathan Schochor

_____

Kerry D. Staton

_____

Schochor, Federico and Staton, P.A.
The Paulton
1211 St. Paul Street
Baltimore, Maryland  21202
(410) 234-1000

Attorneys for the Plaintiffs

16